**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

BANGALY TOURE,

              Petitioner,

    v.

PAMELA BONDI, et al.,

              Respondents.

CIVIL ACTION NO. 3:26-CV-00323

(MEHALCHICK, J.)

## MEMORANDUM

Petitioner, Bangaly Toure ("Toure"), a Guinean citizen and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On February 10, 2026, Toure filed the instant petition, requesting that Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and Craig A. Lowe ("Lowe")[1] release him from custody at the Pike County Correctional Facility in

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 6, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Toure is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 4); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Pamela Bondi, Kristi Noem, and Todd M. Lyons are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Toure on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional*

Lords Valley, Pennsylvania or provide him with an opportunity for bond redetermination. (Doc. 1, at 6). Toure also requests that the Court enjoin his removal to Uganda. (Doc. 1, at 6). To the extent that Toure seeks release from custody, Toure's petition (Doc. 1) is **GRANTED,** and Lowe is **ORDERED** to release Toure from custody.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Toure's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 6). Toure is a citizen of Guinea, who has lived in the United States since November 2023. (Doc. 1, at 1; Doc. 6, at 4). Toure was a youth recruiter for the RPG political opposition party in Guinea, and because of his political affiliations, Toure was imprisoned and tortured by the Guinean military junta from April to August 2023. (Doc. 1, at 2-3). With the help of a sympathetic prison guard, Toure fled Guinea, and on or about November 26, 2023, Toure entered the United States without inspection at or near Lukeville, Arizona. (Doc. 1, at 3; Doc. 6, at 4). On September 5, 2025, Toure was detained by ICE during a routine check-in appointment. (Doc. 6-3, at 2).

The Immigration Court scheduled Toure's individual merits hearing for his asylum application on January 27, 2026; however, on January 22, 2026, the Department of Homeland Security ("DHS") filed a motion to pretermit Toure's asylum application based on the United States-Uganda Asylum Cooperation Agreement. (Doc. 1, at 4; Doc. 6, at 4). The Immigration Court scheduled Toure's master calendar hearing for March 2, 2026, at which Toure faces third-country removal to Uganda.[2] (Doc. 1, at 4; Doc. 6-6).

_Facility_, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

[2] Toure avers that Uganda is not a safe third country because it cannot provide "access to a full and fair procedure for determining a claim to asylum." 8 U.S.C. § 1158(a)(2)(A); (Doc. 1, at 4). Toure submits that in December 2025, Uganda's Minister for Refugees

Toure filed the instant petition for writ of habeas corpus on February 10, 2026. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), Lowe filed a response to Toure's petition on February 18, 2026 (Doc. 6). Toure filed a reply to Lowe's response on February 23, 2026. (Doc. 7). Accordingly, the petition is ripe for disposition.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the

---

announced that Uganda would no longer provide full and fair asylum procedures or grant refugee status to nationals of multiple African countries due to funding shortfalls and an overburdened immigration system. (Doc. 1, at 4).

due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at \*2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at \*8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th

at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over the legal questions of whether § 1225(b) or § 1226(a) applies to Toure and whether Toure is entitled to a bond hearing because these questions are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

Conversely, the Court does not have jurisdiction to decide whether DHS's motion to pretermit Toure's asylum application comports with the INA or the Due Process Clause of the Fifth Amendment. DHS's motion to pretermit Toure's asylum application in favor of third country removal to Uganda arises directly out of Toure's removal proceedings. *See Khalil*, 164 F.4th at 273; 8 U.S.C. § 1252(b)(9). Toure has a hearing date in Immigration Court, at which an immigration judge will take into consideration Toure's asylum application and

DHS's motion to pretermit. (Doc. 6, at 5; Doc. 6-6). If the immigration judge enters an order of removal, Toure may appeal to the Board of Immigration Appeals ("BIA"). *Kahlil*, 164 F.4th at 273-74; § 1252(b)(1). If the BIA affirms the order of removal, Toure may file a PFR with the Third Circuit raising the legal questions of whether third country removal violates the INA or the Due Process Clause. *Khalil*, 164 F.4th at 273-74; § 1252(b)(2) ("the petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").

## IV.   DISCUSSION

Toure contends that his prolonged mandatory detention under § 1225(b)(2)(A) is both a violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 4-6; Doc. 7, at 7-9). Lowe counters that Toure is subject to mandatory detention because he falls squarely under § 1225(b)(2)(A), which provides noncitizens only with the rights and protections set forth by Congress. (Doc. 6, at 16-17, 42). The Court will first address whether Toure was properly detained under § 1225(b)(2)(A). The Court will then address whether Toure's detention violates due process.

### A.   TOURE WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B), WHEN HE SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

Toure was improperly detained under 8 U.S.C. § 1225(b), when he should have been detained under 8 U.S.C. § 1226(a). Toure avers that noncitizens who have lived in the United States for years before ICE apprehended them are not "seeking admission" and are not subject to detention under § 1225(b)(2)(A). (Doc. 7, at 2-3). Lowe contends that Toure is properly detained under § 1225(b)(2)(A) because the statute mandates the detention of noncitizens, like Toure, who are present in the United States without lawful admission. (Doc. 6, at 16).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining

7

immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto*, 2025 WL 2976572, at *5 (collecting cases). The parties dispute whether Toure is still "seeking admission" to the United States. (Doc. 6, at 26-27; Doc. 7, at 2-3).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings,* 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL 2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission

8

into the country." *See Soto,* 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov,* 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings,* 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov,* 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap,* 586 U.S. 392, 397-98 (2019); *see Kashranov,* 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 25, 2026). On September 5, 2025, the BIA

---

[3] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi,* No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court, and the Court declines to follow it here.

adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 2025 WL 2976572 at *7 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Toure's detention. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto*, 2025 WL 2976572, at *5 (collecting cases). Toure is not actively attempting to come into the United States; based on the plain meaning of the phrase "seeking admission," Toure sought admission when he entered the United States on November 26, 2023. (Doc. 6, at 4; Doc. 6-2); *see Kashranov*, 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization").

A noncitizen, like Toure, who has established themselves in the United States, making connections since their entry, is no longer at the "threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025). Section 1226(a) applies to applicants for admission, like Toure, who are not actively seeking admission but who have been residing in the United States for an extended period. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"). Accordingly, Toure was improperly detained under § 1225(b), when he should have been detained under § 1226(a).

B. TOURE'S DUE PROCESS RIGHTS WERE VIOLATED WHEN LOWE IMPROPERLY SUBJECTED HIM TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Toure under § 1225(b)(2)(A) violates Toure's procedural due process rights. Toure avers that Lowe's prolonged mandatory detention of Toure constitutes due process violations. (Doc. 7, at 8). Lowe contends that as an immigration detainee, Toure has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 3, at 42).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process,

courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Toure's favor because Lowe has deprived Toure of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8.

The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Toure's favor because Toure remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error).

The third *Mathews* factor, the government's interest, also weighs in Toure's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of

12

noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at *8. Here, Toure poses no such risk to the government's interest in detaining him. Lowe does not allege that Toure poses a flight risk or danger to the community. (*See* Doc. 6). Further, Toure has a strong application for asylum, and he seeks a path to legal status and safety within the United States. (Doc. 7, at 12). If Toure fails to appear at forthcoming immigration hearings, he could be subject to removal and face "legal limbo" in Uganda, a country he has never set foot in and has no ties to. (Doc. 6-6, at 1; Doc. 7, at 12).

As each *Mathews* factor weighs in Toure's favor, his mandatory detention under § 1225(b) violates his procedural due process rights. Accordingly, Toure's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Toure from custody.[4]

## V.    CONCLUSION

For the foregoing reasons, Toure's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Toure from custody. Lowe is also permanently enjoined from re-detaining Toure under § 1225(b). Toure may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

---

[4] The Court notes that Toure also seeks relief in the form of attorney's fees and costs under the Equal Access to Justice Act. (Doc. 1, at 7). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Toure must request attorney's fees in a separate motion with accompanying exhibits.

An appropriate Order follows.

BY THE COURT:

Dated: February 27, 2026          */s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **United States District Judge**